Filed 8/13/26  P. v. Vaughn CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>BRIAN JULIUS VAUGHN,<br><br>Defendant and Appellant. | D088036<br><br><br>(Super. Ct. No. RIF2405612) |

APPEAL from a judgment of the Superior Court of Riverside County, Valerie Navarro, Judge.  Affirmed.

Sheila O'Connor, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene A. Sevidal, Assistant Attorney General, Robin Urbanski and Monique Myers, Deputy Attorneys General, for Plaintiff and Respondent.

Brian Julius Vaughn appeals from a judgment after a jury verdict finding him guilty of attempted oral copulation with a person under 14 years

of age and annoying or molesting a child under 18 years of age.  Vaughn argues:  (1) there is insufficient evidence to establish his conduct was sufficiently lewd or obscene to support his annoy or molest conviction; and (2) the trial court erred by allowing evidence of an uncharged sex offense. We find no error and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

We summarize only the facts relevant to our resolution of the issues on appeal.

The People charged Vaughn with attempted kidnapping of M.C. to commit rape or oral copulation (Pen. Code,[1] §§ 664/209 [count one]), attempted oral copulation of Z.D., a person under the age of 14 years and 10 years younger than Vaughn (§§ 664/287 [count two]), and annoying or molesting V.R., a child under the age of 18 years (§ 647.6, subd. (a)(1) [count three]).  A jury convicted Vaughn on counts two and three, but was unable to reach a unanimous verdict on count one.  The court declared a mistrial as to count one and granted the People's motion to dismiss the count.  The court also found true the aggravating factor that Vaughn was on probation at the time of the charged offenses.  The court imposed the following sentence:  the middle term of three years for count two and a consecutive term of 365 days for count three, for a total term of four years.

---

[1]     Undesignated statutory references are to the Penal Code.

At trial, the jury heard the following evidence:

A.    *Count One*[2]

On October 31, 2024, at 4:11 p.m., 18-year-old M.C. was walking home from school when she stopped to change her shoes in a supermarket parking lot.  M.C. noticed Vaughn sitting in his car staring at her "for a very long period of time" from across the parking lot.  M.C. made eye contact with Vaughn.  Vaughn then moved his car closer—to approximately four parking spaces away from M.C.—and spoke to her, but M.C. did not respond and continued walking.  When the car again moved closer to her, M.C. called her older sister and asked her to stay on the line with her because she was scared.  Vaughn then asked M.C. if she wanted "to get hugged" or "go closer to him."  M.C. responded, "no thank you."  Vaughn told M.C. he liked her outfit, that they should get to know each other, and asked her to go closer to his car.  M.C. did not respond or comply because she was scared.  M.C. walked toward the nearby supermarket and saw the car driving in the direction she was going before exiting the parking lot.  M.C. walked inside the supermarket.

The next day at school, M.C. told V.R. that she thought she was going to get kidnapped while changing her shoes in the supermarket parking lot the day before.  V.R. told M.C., "the same thing happened to her."  M.C. spoke to an administrator at the school then to the campus police officer.

---

[2]    Although the jury did not reach a verdict on count one, we discuss the facts because they are relevant to Vaughn's second contention on appeal.

3

B.    *Count Two*[3]

Vaughn was Z.D.'s stepfather. On October 31, 2024, Z.D. planned to walk to her maternal grandmother's house after school with her 11-year-old half-brother, J.D., pick up her Halloween costume, and walk to her friend A.S.'s house. One minute before school got out, Vaughn called Z.D. to tell her he would be picking her up. When Z.D. and J.D. arrived at Vaughn's car, Vaughn told J.D. to walk home because he wanted to get Z.D. a drink. This was the first time Vaughn took Z.D. to get a drink without J.D.

Vaughn was driving a gray van belonging to Z.D.'s mother. Z.D. sat in the front passenger seat. After buying boba, Vaughn took a "long route" to A.S.'s house and "started talking." Vaughn brought up a conversation Z.D. had with her mother about Z.D.'s breasts being bigger than her older cousin's. Vaughn then commented that Z.D. was slim and had nice curves. Z.D. was uncomfortable and tried to figure out the "best time to jump out [of] the car." Vaughn then told Z.D. to "give [him] head and [he] will give [her] money." Z.D. understood "give head" to mean oral sex because a couple of weeks earlier she had attended a sex education class. Z.D. did not verbally respond to Vaughn's request and instead opened the car door to jump out. Vaughn said "don't" and put his arm out over Z.D.'s torso to stop her. At the same time, Z.D. saw A.S.'s mother driving by in the opposite direction and waved to her.

Vaughn then dropped Z.D. off at A.S.'s house without stopping to pick up Z.D.'s Halloween costume as originally planned. As Z.D. exited the

---

[3]    Although Vaughn does not appeal his conviction for count two, we discuss the facts because they are relevant to Vaughn's second contention on appeal.

4

vehicle, Vaughn told Z.D. not to tell anyone and she heard him whisper he would "find somebody else to do it." Z.D. went directly into A.S.'s bedroom and started to cry as she told A.S. what happened with Vaughn.

The next day at school, Z.D. told the principal everything that happened with Vaughn. Z.D.'s maternal grandmother picked her up from school and took her home. Later that day, Z.D. told her mother and grandmother what happened with Vaughn the day before. That evening, Z.D. spoke with law enforcement.

C.    *Count Three*

On October 31, 2024, 17-year-old V.R. was with a friend on her high school campus waiting for her mother to pick her up. When V.R. received a call from her mother telling her she was on her way to the school, V.R.'s friend left, and V.R. began walking toward the school gate. As she began walking, V.R. saw "[Vaughn] in his van staring at [her]." She then saw Vaughn "outside of his van" and he "holler[ed]" "Hey. Hey, Shorty. Is that your car?" V.R. did not know what he was referring to and responded, "No, my mom is already waiting for me outside." V.R.'s mother was not there yet, but V.R. lied because she was nervous. As V.R. walked away, Vaughn said, "I can give you a ride." V.R. declined and repeated that her mother was already there. As V.R. walked toward the school gate, Vaughn got in his van, followed her, and continued to call out to her, "Hey, Shorty" three or four times. V.R. ignored him and continued walking inside the school because she did not feel comfortable leaving the school gates. As V.R. continued walking, Vaughn continued to follow her in his van from outside the school gate.

V.R. called her brother and told him that a man was following her. V.R. then turned to go in front of the school while Vaughn was parked outside of the school "waiting, watching [V.R.]." V.R. called her friend and asked him

5

to return and wait with her because she did not feel comfortable as Vaughn was still watching her. V.R.'s mother and brother arrived in separate vehicles. Once inside her mother's car, V.R. wrote down the van's license plate. V.R.'s mother called 911 and provided the license plate number.

D.     *Uncharged Offense*

On November 1, 2024, 38-year-old E.S. was traveling on an electric scooter when Vaughn called out to her from his van and asked her, "Hey, what's your name?" E.S. ignored him and continued on her way. A few minutes later, as E.S. crossed a bridge, Vaughn stopped his vehicle blocking E.S.'s path. Vaughn asked E.S. where she was going and whether she needed a ride. E.S. declined, but Vaughn continued to offer her a ride. E.S. again declined and told him she was waiting for her boyfriend. Vaughn said, "All right. Well, just trying to help," before driving away.

Approximately a block and half away from her bus stop, E.S. saw Vaughn parked at a 7-Eleven. Vaughn told E.S. she lied about her boyfriend. E.S. told Vaughn she was "just trying to get to the bus stop[,]" asked him for a cigarette, and "just kinda played it off[.]" E.S. "was getting stressed" about her phone and scooter dying and getting to the bus on time. Vaughn offered to buy her a cigar.

When E.S. got to the bus stop, she realized she was a block away from the correct bus stop. Vaughn then drove up, parked next to E.S., and gave her the cigar. E.S. told Vaughn she was headed to Riverside and Vaughn offered to take her closer, "maybe two exits down the freeway." E.S. got into Vaughn's van and Vaughn placed her scooter in the backseat. Once in the van, Vaughn exited the freeway at the first exit and drove around in a loop. E.S. reminded Vaughn to go "back towards Riverside," but he "laughed it off, like, he knew a better place to go." Vaughn got back on the freeway and then

exited again.  E.S. asked Vaughn to stop and pull over multiple times, but he refused.  While driving, Vaughn "talk[ed] about sex," telling E.S. she was pretty, and asked her to "give him a chance" and to "meet up later on at night."  Vaughn asked E.S., "Why don't you just let me take you in the back seat and eat you out?"  E.S. asked him if he would want someone to speak to his daughters like that and Vaughn replied, "pussy's pussy."  E.S. attempted to open the car door to leave the car, but Vaughn told her, "No, no, no.  . . .  I will just drop you off right here," but continued to drive.  In an attempt to "alleviate" Vaughn, E.S. gave him her phone number and assured him she would call him later.  Vaughn gave E.S. a cell phone for her to use to call him, but she left it in the van.

Eventually, Vaughn stopped the car and let E.S. out.  As E.S. exited the van, Vaughn asked her for a hug a "couple times," but she declined.  E.S. then walked approximately half a mile while Vaughn remained parked with his headlights on watching E.S. walk away.  E.S. reached a residential area when Vaughn drove next to her and said, "I can still give you a ride . . . it doesn't have to go sour, it doesn't have to finish now, just come back . . . come back in the van, I will give you a ride closer to the bus stop."  E.S. declined and reassured him they would talk later.  Vaughn drove past E.S., made a U-turn, and drove toward E.S. at a speed which made E.S. think he was going to hit her with the van.  Vaughn then stopped the van, grabbed her left wrist and scooter, and continued driving at approximately one mile per hour as he tried to "grab more and more of [her] body into the van."  E.S. tried to fight and kick Vaughn off while telling him to let go.  As he grabbed on to E.S., Vaughn said, "Bitch, . . . let me give you a fucking ride, you fucking stupid bitch . . . I got people."  E.S. freed herself, left her scooter, and ran to the other side of the street.  Vaughn exited his car, grabbed E.S.'s scooter and

7

threw it at her while yelling, "You dumb bitch . . . I told you not to fucking do this shit." As E.S. ran toward a streetlight, Vaughn followed her in the van. E.S. hid behind a car, waited for Vaughn to pass her, returned for her scooter, and went in the opposite direction.

E.S. ran into a gas station and called 911. Vaughn parked at a gas pump, entered the gas station, and threw a cell phone at E.S.

## DISCUSSION

Vaughn argues on appeal: (1) there is insufficient evidence to establish his conduct was sufficiently lewd or obscene to support his annoy or molest conviction involving V.R.; and (2) that the trial court erred by allowing evidence of the uncharged offense against E.S. We disagree.

A. *Substantial Evidence Supports a Conviction on Count Three*

1. Standard of Review and Governing Law

When evaluating a challenge to the sufficiency of the evidence to support a conviction, we review the record in the light most favorable to the judgment to determine whether it contains substantial evidence. (*People v. Collins* (2025) 17 Cal.5th 293, 307; *Jackson v. Virginia* (1979) 443 U.S. 307, 319.) Substantial evidence is evidence that is reasonable, credible, and of solid value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*Collins,* at p. 307.) We presume " ' "in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." ' " (*People v. Holmes, McClain and Newborn* (2022) 12 Cal.5th 719, 780.)

Section 647.6, subdivision (a)(1), makes it a misdemeanor to "annoy[] or molest[] any child under 18 years of age." To establish a violation under this section, the prosecution must prove four elements: "(1) the defendant engaged in conduct directed at a child; (2) a normal person, without

8

hesitation, would have been disturbed, irritated, offended, or injured by the defendant's conduct; (3) the defendant's conduct was motivated by an unnatural or abnormal sexual interest in the child; and (4) the child was under the age of 18 years at the time of the conduct." (*People v. Clotfelter* (2021) 65 Cal.App.5th 30, 50 (*Clotfelter*); CALCRIM No. 1122.)

Vaughn contends the evidence was insufficient to prove the second element only—irritation, offense, or injury by his conduct. To determine whether the defendant's conduct would unhesitatingly irritate or disturb a normal person, we employ an objective test. (*People v. Lopez* (1998) 19 Cal.4th 282, 290 [objective test not dependent on whether the child was in fact irritated or disturbed].) The defendant's observable conduct, on its own, must unhesitatingly irritate or disturb a reasonable person. (*Id.* at p. 291.) In evaluating the conduct, "we may not consider either the defendant's intent or the child's subjective discomfort." (*People v. Valenti* (2016) 243 Cal.App.4th 1140, 1162.)

2.     Analysis

Vaughn argues there is insufficient evidence to support the annoy and molest conviction because section 647.6 requires a lewd and obscene act and his conduct was not objectively disturbing. We are not persuaded by either argument.

Section 647.6 is violated when a defendant engages in the requisite objectively annoying or offensive conduct. (*People v. Phillips* (2010) 188 Cal.App.4th 1383, 1388.) The terms annoy and molest " ' "mean to disturb or irritate, especially by continued or repeated acts. . . ." ' " (*In re L.O.* (2021) 67 Cal.App.5th 227, 242.) Explicit sexual conduct is not required. (See *People v. Kongs* (1994) 30 Cal.App.4th 1741, 1751 [photographer's conduct asking child models to pose in awkward or compromising positions

9

was unhesitatingly irritating or offensive]; see also *In re Sheridan* (1964) 230 Cal.App.2d 365, 370–372 [defendant's conduct giving girls a ride and then refusing to let them out supported annoy and molest charge].)

Relying on *People v. Carskaddon,* Vaughn argues "a conviction under section 647.6 all but requires 'a lewd and obscene act either in front of the child or with the child.' " (*People v. Carskaddon* (1957) 49 Cal.2d 423, 426 (*Carskaddon*).) This is incorrect. In *Carskaddon,* the court determined defendant's conduct of sitting under a tree with a six-year-old girl, buying her an ice cream, and walking her down the street would not have unhesitatingly irritated a normal person. (*Ibid.*) The *Carskaddon* court distinguished cases in which a defendant committed "a lewd and obscene act either in front of the child or with the child" from the facts of the case. (*Ibid.*) The court went on to explain the "words 'annoy' and 'molest' are synonymously used" and "generally refer to conduct designed 'to disturb or irritate [especially] by continued or repeated acts . . . .' " (*Ibid.*) Although the *Carskaddon* court found the defendant's conduct did not rise to the level required by section 647.6, the court did not hold or suggest that a lewd or obscene act was required.

Vaughn's reliance on *Clotfelter* is similarly misplaced. (*Clotfelter, supra*, 65 Cal.App.5th at p. 52.) He asserts that the court in *Clotfelter* explained that section 647.6 "requires that the defendant's conduct be 'so lewd or obscene that a normal person would unhesitatingly be irritated by it.' " But the *Clotfelter* court did not make such a statement and the quote Vaughn attributes to *Clotfelter* does not appear in the opinion. Rather, like in *Carskaddon,* the *Clotfelter* court observed that the words " ' "annoy" ' " and " ' "molest" ' " are " ' "synonymous and generally refer to conduct designed to disturb, irritate, offend, injure, or at least tend to injure, another person," ' "

10

and that an objective test is the applicable test. (*Clotfelter,* at p. 50.) In *Clotfelter*, the court found that the conduct of sending nonsexual e-mails and gifts to a child was not objectively irritating or disturbing under the statute. (*Id.* at p. 52.) Although the *Clotfelter* court noted that Clotfelter "did not solicit sex or any quid pro quo," the court did not state that the statute required it like Vaughn suggests. (*Id.* at p. 53.)

Vaughn points to no authority requiring the conduct under section 647.7 be lewd or obscene. (Cf. *People v. Thompson* (1988) 206 Cal.App.3d 459, 466 (*Thompson*)["the annoying or molesting act need not, in and of itself, be lewd"].) Instead, Vaughn argues that reliance on *Thompson* is misplaced because the defendant's actions were significantly different from Vaughn's. We disagree.

Vaughn argues that "Thompson physically blocked the 12-year-old's path by stopping his car directly in front of her, forcing her to go around him" and that action coupled with "sexual[ly] motivated facial and hand gestures" make *Thompson* distinguishable. Again, Vaughn misrepresents the opinion. In *Thompson*, the defendant repeatedly drove past a young girl riding her bike, stared at her, made a hand and facial gesture in her direction, stopped his vehicle along her route causing her to pass by the stopped vehicle, and drove slowly as he approached her and as he drove alongside her. (*Thompson, supra*, 206 Cal.App.3d at pp. 466–467.) The court in *Thompson* found that conduct "would place a normal person in a state of being unhesitatingly irritated, if not also fearful." (*Id.* at p. 467.) Notably, the facts of *Thompson* do not include the defendant blocking the child's path or a description of the facial and hand gestures as sexual. (*Id.* at pp. 461, 466 ["he stopped his vehicle along her route of travel, causing her to pass by the stopped vehicle" and "[h]e shook his right hand, and moved his mouth as if

11

whispering or pursing his lips"].) Vaughn's repeated attempts at engaging V.R. are similar to the conduct of the defendant in *Thompson*.

In a further attempt to show that his conduct did not rise to the required level, Vaughn cites a string of cases finding various sexual acts against or in front of children were "unhesitatingly disturbing." Vaughn is correct that the cases he cites all found the defendants' conduct to be disturbing, but that does not mean that Vaughn's conduct is not also disturbing within the meaning of the statute simply because the "facts of this case are of a wholly different character." Vaughn attempts to recharacterize his actions as "friendly banter" and simply an attempt to engage V.R. in conversation, yet his actions were captured by the surveillance video which shows Vaughn's slow, repeated, and calculated movements following V.R. A reasonable jury could find Vaughn's conduct objectively irritating or disturbing given he did not stop following or watching V.R. even after she declined a ride and told him her mother was nearby.

Evidence of continued, repeated actions such as driving past, staring, driving slowly and alongside a child is sufficient to satisfy the section 647.6 conduct standard. (See, e.g., *Thompson, supra*, 206 Cal.App.3d at p. 466; *Carskaddon, supra*, 49 Cal.2d at p. 426.) Here, Vaughn engaged in each of these actions. The evidence presented at trial showed Vaughn watched V.R. for approximately 20 minutes from inside her high school campus, waited for her friend to leave, called out "Hey, Shorty" while he stood outside of his van, offered V.R. a ride after she told him her mother was waiting for her, drove slowly following V.R. even after she declined a ride, continued to call out "Hey Shorty" three or four more times, and remained parked outside the school watching V.R. until her mother arrived. On these facts, we conclude there is

sufficient evidence to support a conviction for count three, annoying or molesting a child under the age of 18.

B.     *The Trial Court Did Not Err When It Admitted Evidence of a Prior Uncharged Sex Offense Under Evidence Code Sections 1108 and 352*

Vaughn further contends the court prejudicially erred and violated his constitutional due process rights by admitting testimony of a prior uncharged, violent sex offense.[4] Vaughn recognizes that Evidence Code section 1108 permits trial courts to admit evidence of a prior sex offense as evidence of a predisposition to commit sex offenses, but argues that under Evidence Code section 352, the prejudicial effect of E.S.'s testimony outweighed its probative value and should not have been allowed.

1.     Additional Background

In the original complaint, the prosecution charged Vaughn with the attempted kidnapping of E.S. to commit a sexual offense (§§ 664/209). The amended information did not include the charges relating to E.S. But in motions in limine, the prosecution moved to admit evidence of Vaughn's uncharged sex offense against E.S. under Evidence Code section 1108. Defense counsel "request[ed] that any reference to [E.S.] or her statements not be allowed" given that the prosecution had dismissed the charge and doubted E.S.'s credibility.

---

[4]     We note that Vaughn does not object to the evidence relating to E.S. being categorized as a "sexual offense" either at the trial court or on appeal. (Evid. Code, § 1108, subd. (a) ["In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352."].)

13

The prosecution countered that it did not proceed on the charge as to E.S. because they anticipated difficulty proving the charge to "12 jurors beyond a reasonable doubt," not because they doubted E.S.'s credibility. The prosecution explained E.S. would provide a detailed description of her interactions with Vaughn, his conduct, and his persistence in speaking with her. The prosecution argued E.S.'s testimony would be more probative than prejudicial because it showed Vaughn's conduct of creeping slowly along in his van behind E.S. was similar to his conduct with V.R., and his request to "orally copulate [E.S.]" was similar to the request he made to Z.D.

In evaluating the testimony under Evidence Code section 352, the court ruled it was more probative than prejudicial. The court highlighted the "recency between the two dates" and that "the manner and conduct that transpired within 48 hours" was of probative value. Because the court recognized the "credibility of this particular witness and the allegations she's making [were] at issue," it allowed impeachment evidence of E.S.'s criminal history and instructed the jury on how to properly weigh the evidence.

2.     Standard of Review and Governing Law

We review the trial court's Evidence Code section 352 determination under the deferential abuse of discretion standard. (*People v. Avila* (2014) 59 Cal.4th 496, 515.) We will not reverse unless the trial court exercised its discretion in an arbitrary, capricious, or absurd manner resulting in a miscarriage of justice. (*People v. Hovarter* (2008) 44 Cal.4th 983, 1004.)

In general, evidence of a defendant's uncharged conduct is not admissible to prove that the defendant has a criminal disposition or propensity. (Evid. Code, § 1101, subd. (a); *People v. Kipp* (1998) 18 Cal.4th 349, 369.) But Evidence Code section 1108 provides that when a defendant is charged with a sexual offense, evidence of the defendant's other sexual

14

offenses is not made inadmissible by Evidence Code section 1101 if the evidence is not inadmissible under Evidence Code section 352.

The Legislature, in enacting Evidence Code section 1108, recognized that " 'sex crimes are usually committed in seclusion without third party witnesses or substantial corroborating evidence.  The ensuing trial often presents conflicting versions of the event and requires the trier of fact to make difficult credibility determinations.' " (*People v. Villatoro* (2012) 54 Cal.4th 1152, 1160; *People v. Falsetta* (1999) 21 Cal.4th 903, 915 (*Falsetta*).)  Evidence Code section 1108 allows the trier of fact to consider uncharged sexual offense evidence as evidence of the defendant's propensity to commit sexual offenses in evaluating the defendant's and the victim's credibility and in deciding whether the defendant committed the charged sexual offense.  (*Villatoro,* at pp. 1160, 1164, 1166–1167; *Falsetta,* at pp. 911–912, 922.)

Further, uncharged sexual conduct evidence is admissible if the probative value of the evidence is not substantially outweighed by the probability its admission will necessitate undue consumption of time or create substantial danger of undue prejudice, of confusing the issues, or misleading the jury.  (Evid. Code, §§ 352, 1108, subd. (a).)

Rather than admit or exclude every sex offense a defendant commits, trial courts must engage in careful weighing of factors such as "its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's

15

other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense." (*Falsetta, supra,* 21 Cal.4th at p. 917.)

> 3.    Analysis

On appeal, Vaughn argues that the trial court erred in allowing evidence related to the incident with E.S. because it was more prejudicial than probative. Vaughn contends there were significant differences between the charged and uncharged offenses and that the "evidence related to E.S. was cumulative, caused a great risk of misleading the jury, and [was] more inflammatory." First, Vaughn points to the age difference between E.S. and the other victims as a "significant difference[]." Although it is true that the ages varied as E.S. was 38 years old while the other victims were 12, 17, and 18 years old, the underlying conduct and pattern of Vaughn's behavior was so strikingly similar that the variation in ages did not make the prior offense irrelevant. (*People v. Escudero* (2010) 183 Cal.App.4th 302, 311 ["prior offense evidence had substantial probative value despite the differences in the ages of the females"].)

Second, Vaughn argues that evidence related to E.S. and the uncharged offense was cumulative to the charged offenses, which already served to establish propensity. We disagree. E.S.'s case included the only incident, aside from Z.D.'s case, in which Vaughn inquired about oral sex. Therefore, E.S.'s testimony was not cumulative to the other two charged offenses. Moreover, E.S.'s case included the only incident, aside from V.R.'s case, in which Vaughn repeatedly drove by and insisted on giving her a ride. Therefore, E.S.'s testimony was not cumulative to the other two charged offenses. (See *People v. Hill* (2011) 191 Cal.App.4th 1104, 1138–1139 [proof of eight predicate offenses not cumulative or unduly prejudicial]; see also *People v. Miramontes* (2010) 189 Cal.App.4th 1085, 1103 [prior offense

16

testimony was not cumulative merely because three current victims were available to testify].)

Third, Vaughn argues that allowing evidence related to E.S. caused a great risk of misleading the jury. We disagree. The court specifically instructed the jury with CALCRIM No. 1191A, explaining that it was allowed to consider the prior crime evidence "only if the People have proved by a preponderance of the evidence that the defendant in fact committed the uncharged offenses." It added: "If you decide that the defendant committed the uncharged offense, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses, and based on that decision, also conclude that the defendant was likely to commit *attempt kidnap for oral copulation, attempt oral copulation with person under 14* and *annoying or molesting a child*, as charged here. If you conclude that the defendant committed the uncharged offense, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of *attempt kidnap for oral copulation, attempt oral copulation with person under 14* and *annoying or molesting a child.* The People must still prove each charge beyond a reasonable doubt."

Fourth, Vaughn argues that testimony of his violence toward E.S. was more inflammatory than the evidence of the charged offenses because "it portrayed conduct far more violent and disturbing than the charged acts." However, the court could have reasonably concluded his actions in physically restraining an adult woman were no more inflammatory than him isolating his 12-year-old stepdaughter, commenting on her developing breasts and curves, physically preventing her from jumping out of the car, and asking her for oral sex in exchange for money.

We conclude that under Evidence Code section 352, the trial court did not abuse its discretion in evaluating the prior acts and finding them probative because Vaughn's past actions bore significant similarities to his conduct in the charged offenses.  Specifically, Vaughn's conduct as to E.S. followed a similar pattern to his conduct with M.C. and V.R. of carefully watching each victim, initiating contact from or near his vehicle, offering rides, following them slowly as they walked away, and repeatedly calling out to them from his vehicle.  Vaughn's conduct with E.S. was also largely similar to his conduct with Z.D.  He managed to get Z.D. into his van by offering her a ride to her friend's house and once she was in the vehicle, he took a different route, struck up a sexual conversation, and requested oral sex. Vaughn's past conduct supported an inference he had a propensity to commit sex offenses, including ones similar to the charged crimes.  Thus, it had substantial probative value.

Finally, Vaughn claims admission of the prior conduct evidence constituted prejudicial error which violated his rights to a fair trial and due process because it rendered his trial fundamentally unfair.  Vaughn argues the evidence was prejudicial because it painted Vaughn as a "bad person" and provides no other basis for this claim aside from the grounds addressed above.  Because we conclude that testimony as to the uncharged offense was properly admitted, his constitutional claims are also unsupported by the evidence.  (See *People v. Fuiava* (2012) 53 Cal.4th 622, 670 [finding no due process violation where the trial court did not abuse its discretion in admitting the evidence].)

As the trial court properly determined, any prejudicial effect inherent in such propensity evidence was outweighed by its probative value.  (See *People v. Doolin* (2009) 45 Cal.4th 390, 439 [noting also that prejudice is not

18

synonymous with damaging].)  Finding no error in the admission of this evidence, we need not conduct any harmless error analysis.  (See *People v. Walker* (2006) 139 Cal.App.4th 782, 808 [" 'the erroneous admission of prior misconduct evidence does not compel reversal unless a result more favorable to the defendant would have been reasonably probable if such evidence were excluded' "].)

DISPOSITION

The judgment is affirmed.

BERMÚDEZ, J.

WE CONCUR:


CASTILLO, Acting P. J.


RUBIN, J.

19